**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**25-CR-20174-WILLIAMS/GOODMAN**
CASE NO. _____

50 U.S.C. § 4819
18 U.S.C. § 371
18 U.S.C. § 554(a)
13 U.S.C. § 305(a)(1)
18 U.S.C. § 1956(h)
18 U.S.C. § 2
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

**ALEXANDER MAMONOV and**
███████████████████

Defendants.
_____/

**INDICTMENT**

The Grand Jury charges that:

**GENERAL ALLEGATIONS**

At times material to this Indictment:

**The Export Control Reform Act and Export Administration Regulations**

1.      The Export Control Reform Act ("ECRA"), 50 U.S.C. § 4801 *et seq.*, and the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774, restrict the export, reexport, and in-country transfer of certain dual-use items absent a license from the U.S. Department of Commerce ("USDOC").

2.      Through the EAR, the USDOC's Bureau of Industry and Security ("BIS") reviews and controls the export of certain items from the United States to foreign destinations. *See* 15 C.F.R. §§ 734.2–734.3. In particular, BIS has placed restrictions on the export and reexport of

items that the BIS has determined could make a significant contribution to the military potential or nuclear proliferation of other nations or that could be detrimental to the foreign policy or national security of the United States. Under the EAR, such restrictions depend on several factors, including the technical characteristics of the item, the destination country, the end user, and the end use.

3. The EAR impose licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully reexported from one foreign destination to another.

4. The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL"), which is set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1. Items on the CCL are categorized by an Export Control Classification Number ("ECCN"), each of which has export control requirements depending on the final destination, end use, and end user.

5. On February 24, 2022, in response to Russia's further invasion of Ukraine, the USDOC imposed new license requirements on exports and reexports to Russia. As of that date, any item classified under any ECCN in Categories 3 through 9 of the CCL requires a license to be exported to Russia. *See* 87 Fed. Reg. 12226 (Mar. 3, 2022). As of April 8, 2022, license requirements for exports to Russia were expanded to cover all items on the CCL. *See* 87 Fed. Reg. 22130 (Apr. 14, 2022); 15 C.F.R. 746.8. Requests for licenses to export items on the CCL to Russia are reviewed under a policy of denial in all cases. *See* 15 C.F.R. § 746.8(b).

6. A Temporary Denial Order ("TDO") is an administrative order issued under the statutory authority of ECRA and the EAR and signed by the Assistant Secretary of Commerce for

Export Enforcement when presented with evidence demonstrating the need to "temporarily deny export privileges when such an order is necessary in the public interest to prevent the occurrence of an imminent violation." 50 U.S.C. § 4820(a)(5); 15 C.F.R. § 766.24. Any named parties to the TDO, which further encompasses any related parties, agents, representatives, or those acting for or on their behalf, are broadly prohibited from directly or indirectly participating "in any way" in a transaction involving commodities of United States origin or those otherwise subject to the EAR. The TDO also prohibits third parties from engaging in a broad range of conduct subject to the EAR with denied persons.

7.      Under ECRA, it is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any regulation, order, license, or authorization issued pursuant to ECRA or the EAR. *See* 50 U.S.C. § 4819(a)(1) and (b).

### Smuggling

8.      Section 305, Title 13 of the United States Code, provides that "[a]ny person who knowingly fails to file or knowingly submits false or misleading export information through the Shippers Export Declaration (SED) (or any successor document) or the Automated Export System (AES) shall be [guilty of a crime]."

9.      Similarly, 15 C.F.R. § 30.71 provides that "[a]ny person . . . who knowingly fails to file or knowingly submits, directly or indirectly, to the U.S. Government, false or misleading export information through the AES, shall be [guilty of a crime]."

10.     The Electronic Export Information ("EEI") is the required documentation submitted to the United States Government through the AES in connection with an export shipment from the United States. Exporters or their authorized agents are required to file accurate

3

and truthful EEI for every export of goods from the United States with a value of $2,500 or more. However, since June 29, 2020, an EEI is required to be filed for all goods to Russia listed on the CCL, regardless of the value of the goods, and, generally, for all goods requiring an export license. *See* 15 C.F.R. §§ 758.1, 30.2.

11.     A material part of the EEI and AES, as well as other export filings, is information concerning the end user and ultimate destination of the export. The identity of the end user and/or ultimate destination may determine whether the goods: (a) may be exported without any specific authorization or license from the United States Government; (b) may be exported with the specific authorization or license from the United States Government; or (c) may not be exported from the United States.

12.     The smuggling statute, 18 U.S.C. § 554, provides: "Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be [guilty of a crime]."

13.     Because 13 U.S.C. § 305 and 15 C.F.R. § 30.71 are "law[s] or regulation[s] of the United States," violations of those provisions in connection with the fraudulent or knowing export, or receipt or facilitation of transportation prior to exportation, can serve as the basis for a violation of the smuggling statute, 18 U.S.C. § 554.

**Relevant Entities**

14.     Dar Sky Inc. ("Dar-Sky") was a Florida corporation with a principal place of business listed as **ALEXANDER MAMONOV's** personal residence located in Miami-Dade County in the Southern District of Florida. MAMONOV is listed as the Vice President of Dar Sky.

15.     PJSC Aeroflot ("Aeroflot") was a state-owned Russian airline. From April 7, 2022, to the present, Aeroflot was the subject of a TDO prohibiting Aeroflot and other persons or companies acting for or on its behalf, directly or indirectly, from participating in any export transaction subject to the EAR.

16.     Skytechnic was a company headquartered in Moscow, Russia that provided aircraft maintenance services.

17.     Translink Trading Limited ("Translink") was an international import/export business located in China.

18.     U.S. Company 1 was a supplier of airplane parts headquartered in Passaic, New Jersey.

19.     U.S. Company 2 was a supplier of airplane parts headquartered in Pompano Beach, Florida.

**The Defendants**

20.     Defendant **ALEXANDER MAMONOV** was a citizen of Russia who resided in Miami-Dade and Broward Counties in the Southern District of Florida and was the vice president of Dar Sky.

21.     Defendant ███████████ was a citizen of Russia residing in Russia and the head of procurement for Skytechnic.

22.    At all times relevant to this Indictment, neither the defendants nor their agents obtained a license from the USDOC to export items subject to the EAR to Russia.

### OVERVIEW OF THE CRIMINAL SCHEMES

23.    Since the additional export restrictions were imposed on Russia on February 24, 2022, and the TDO was imposed on Aeroflot on April 7, 2022, **ALEXANDER MAMONOV** and ▉▉▉▉▉▉▉▉ have knowingly and willfully violated and evaded those export restrictions to ship aviation parts and supplies to Aeroflot in Russia by using intermediary companies and countries to obfuscate the true end destination and end users. Examples of the export control-evasion scheme are described in detail below.

#### A.  Export #1 - The Shipment of 300 Element Oil Filters

24.    On or about October 21, 2022, **ALEXANDER MAMONOV** sent an electronic mail ("email") to the owner of U.S. Company 1 requesting a price quote for element oil filters. After U.S. Company 1 responded with a quote of $874 per filter, **MAMONOV** replied that companies from Hong Kong would be reaching out to U.S. Company 1 to purchase 300 element oil filters.

25.    On or about October 24, 2022, **ALEXANDER MAMONOV** told ▉▉▉▉▉▉ ▉▉▉▉▉ that he had an order from Aeroflot for 300 element oil filters and that ▉▉▉▉ could purchase the element oil filters from U.S. Company 1. **MAMONOV** advised ▉▉▉▉ to communicate with the owner of U.S. Company 1 using a Hong Kong address.

26.    On or about October 25, 2022, following **MAMONOV**'s direction, ▉▉▉▉▉▉ ▉▉▉▉▉ using purchase@hong-fan.com, sent the owner of U.S. Company 1 an email requesting a price quote for 300 element oil filters.

6

27.     Between on or about December 16, 2022, and on or about December 21, 2022, ████████████████ caused a series of four wire transfers totaling $414,000 to be sent from Turkey to U.S. Company 1's bank account in the United States.

28.     On or about December 23, 2022, ███████████████ caused to be sent a $33,517 wire from China to Dar Sky's bank account in the United States as payment for **ALEXANDER MAMONOV's** commission for the sale of the 300 element oil filters.

29.     On or about January 16, 2023, U.S. Company 1, relying on information provided to it, filed EEI through the AES, which falsely reported to the U.S. Government that the shipment's ultimate consignee and destination were in the United Arab Emirates.

30.     On or about January 17, 2023, U.S. Company 1 exported 300 element oil filters to a company located in Dubai, United Arab Emirates. Thereafter, **ALEXANDER MAMONOV** and ████████████████ arranged to reexport those 300 element oil filters to Aeroflot in Russia. The element oil filters are classified as ECCN 9A991 on the CCL and required a BIS license to export or reexport to Russia at the time of shipment. However, no BIS license for export or reexport to Russia was applied for, or obtained, in connection with the shipment of the element oil filters. Further, at the time of shipment, the element oil filters could not have been legally exported to Aeroflot due to a TDO.

**B. Export #2 - The Shipment of an Over Temperature Shut Off Valve**

31.     On or about August 8, 2023, $13,500 was sent from Translink's bank account in China to U.S. Company 2's bank account in the United States as payment for one Over Temperature Shut Off Valve.

32.     On or about August 15, 2023, U.S. Company 2, relying on information provided to it, filed EEI through the AES, which falsely reported to the U.S. Government that the shipment's ultimate consignee and destination were in China.

33.     On or about August 16, 2023, U.S. Company 2 exported the Over Temperature Shut Off Valve to a company located in China.

34.     On or about August 24, 2023, **ALEXANDER MAMONOV** and ███████ ███████ arranged to reexport the Over Temperature Shut Off Valve to Aeroflot in Russia. The Over Temperature Shut Off Valve is classified as ECCN 9A991 on the CCL and required a BIS license to export or reexport to Russia at the time of shipment. However, no BIS license for export or reexport to Russia was applied for, or obtained, in connection with the shipment of the Over Temperature Shut Off Valve. Further, at the time of shipment, the Over Temperature Shut Off Valve could not have been legally exported to Aeroflot due to a TDO.

**C.   Export #3 – The Shipment of an Air Data Inertial Reference Unit**

35.     On or about July 17, 2023, U.S. Company 1 received an email from Translink requesting a quote for, among other items, five Air Data Inertial Reference Units.

36.     On or about July 20, 2023, **ALEXANDER MAMONOV** was copied on an email sent to Aeroflot by another Russian company containing a price quote for three Air Data Inertial Reference Units.

37.     On or about August 7, 2023, Translink sent an email to U.S. Company 1 containing a purchase order for one Air Data Inertial Reference Unit for the price of $567,000.

38.     On or about August 22, 2023, Translink wired $567,000 from its bank account in China to the bank account of U.S. Company 1 in the United States.

39.     On or about August 25, 2023, **ALEXANDER MAMONOV** sent ███████ ███████ two invoices from Dar Sky to Translink, one for $44,000 and one for $46,000, both containing the description "Sales Representative Commission, August, 2023." On or about August 31, 2023, **MAMONOV** sent ███████ a third invoice from Dar Sky to Translink for $28,000 with the same description.

40.     On or about September 5, 2023, Translink sent three wires in the amounts of $46,000, $44,000, and $28,000 from its bank account in China to the bank account of Dar Sky in the United States.

41.     On or about October 10, 2023, BIS granted U.S. Company 1 export license number D1334828 to export an Air Data Inertial Reference Unit. Translink was listed as the intermediate consignee, and the Hong Kong branch of a Chinese company was listed as the end user. The total price was listed as $567,000.

42.     On or about October 18, 2023, U.S. Company 1, relying on information provided to it, filed EEI through the AES, which falsely reported to the U.S. Government that the shipment's ultimate consignee and destination were in China.

43.     On or about October 21, 2023, U.S. Company 1 exported an Air Data Inertial Reference Unit to China under export license number D1334828.

44.     On or about December 8, 2023, **ALEXANDER MAMONOV** and ███████ ███████ arranged to reexport the Air Data Inertial Reference Unit to Aeroflot in Russia. The Air Data Inertial Reference Unit is classified as ECCN 7A103 on the CCL and required a BIS license to export or reexport to Russia at the time of shipment. However, no BIS license for export or reexport to Russia was applied for, or obtained, in connection with the shipment of the Air Data

Inertial Reference Unit. Further, at the time of shipment, the Air Data Inertial Reference Unit could not have been legally exported to Aeroflot due to a TDO.

## COUNT 1
## CONSPIRACY TO VIOLATE THE EXPORT CONTROL REFORM ACT
### (50 U.S.C. § 4819)

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From as early as in or around November 2022, the exact date being unknown to the Grand Jury, and continuing through at least on or about October 3, 2024, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

## ALEXANDER MAMONOV
## and
███████████████

together and with others known and unknown to the Grand Jury, did knowingly and willfully conspire to violate and cause one or more violations of the Export Control Reform Act (50 U.S.C. §§ 4801-4852), the Export Administration Regulations (15 C.F.R. Parts 770-774), and orders, licenses, and authorizations issued thereunder by exporting and causing the exportation of items subject to Export Administration Regulations, including, items on the Commerce Control List, that is, aviation parts and equipment, from the United States to, on behalf of, and for the benefit of, Aeroflot, in Russia, without having first obtained the required licenses and without approval from the USDOC.

## OBJECT AND PURPOSE OF THE CONSPIRACY

3.      It was the object and purpose of the conspiracy for **ALEXANDER MAMONOV**, ███████████████, and their co-conspirators (collectively, the "co-conspirators") to unlawfully

enrich themselves by: (a) acquiring and obtaining, on behalf of and for the benefit of Russian airline company Aeroflot, export-controlled aircraft parts and components manufactured and sold in the United States; (b) concealing the prohibited export activities through various means, including asserting false end users in countries other than Russia, to evade United States export laws and regulations; and (c) deceiving the United States government and impairing, impeding, and obstructing the functions and operations of the BIS in the enforcement of export control laws and regulations administered by that agency so as to avoid penalties and disruption of the illegal activities.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.    **ALEXANDER MAMONOV,** ▮▮▮▮▮▮▮▮  and their co-conspirators would and did agree to export and cause to be exported from the United States to Aeroflot in Russia various aviation parts and equipment subject to Export Administration Regulations, including parts and equipment on the Commerce Control List set forth in Title 15, Code of Federal Regulations, part 774, Supplement No. 1, without first having obtained a license for such export from the United States Department of Commerce.

All in violation of Title 50, United States Code, Section 4819 and Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.8(a)(1) and 764.2.

## COUNTS 2-4
## EXPORT OF ITEMS SUBJECT TO THE EXPORT CONTROL REFORM ACT
### (50 U.S.C. § 4819(a)(1))

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates listed below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ALEXANDER MAMONOV**
**and**

███████████████

did knowingly and willfully export and attempt to export, and attempt to cause and did cause the export of, items subject to Export Administration Regulations, including items on the Commerce Control List, as detailed below, from the United States to, on behalf of, and for the benefit of, Aeroflot, in Russia, without first having obtained a license and written approval from the United States Department of Commerce:

| COUNT | APPROXIMATE DATE | ITEMS |
|-------|------------------|-------|
| 2 | January 17, 2023 | 300 Element Oil Filters |
| 3 | August 16, 2023 | 1 Over Temperature Shut Off Valve |
| 4 | October 21, 2023 | 1 Air Data Inertial Reference Unit |

In violation of Title 50, United States Code, Section 4819(a)(1), Title 15, Code of Federal Regulations, Sections 736.2(b)(1) and 764.2, and Title 18, United States Code, Section 2.

## COUNT 5
## CONSPIRACY TO COMMIT SMUGGLING
### (18. U.S.C. § 371)

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From as early as in or around November 2022, the exact date being unknown to the Grand Jury, and continuing through at least on or about October 3, 2024, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ALEXANDER MAMONOV**
**and**

███████████████████

together and with others known and unknown to the Grand Jury, did knowingly and willfully conspire to commit a federal offense, specifically, to fraudulently and knowingly export and send, and attempt to export and send, from the United States to a place outside thereof, that is, Russia, merchandise, articles, and objects contrary to a law and regulation of the United States, that is, the Export Control Reform Act (ECRA) (50 U.S.C. § 4819); Submitting False or Misleading Export Information (13 U.S.C. § 305); and the Foreign Trade Regulations (15 C.F.R. § 30.71), in violation of Title 18, United States Code, Section 554.

## OBJECT AND PURPOSE OF THE CONSPIRACY

3.      It was the object and purpose of the conspiracy for **ALEXANDER MAMONOV**, ████████████████, and their co-conspirators (collectively, the "co-conspirators") to unlawfully enrich themselves by: (a) acquiring and obtaining, on behalf of and for the benefit of Russian airline company Aeroflot, export-controlled aircraft parts and components manufactured and sold in the United States; (b) concealing the prohibited export activities through various means, including asserting false end users in countries other than Russia, to evade United States export laws and regulations; and (c) deceiving the United States government and impairing, impeding, and obstructing the functions and operations of the BIS in the enforcement of export control laws

and regulations administered by that agency so as to avoid penalties and disruption of the illegal activities.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.      ALEXANDER MAMONOV, ███████████, and their co-conspirators would and did agree to export and cause to be exported from the United States to Aeroflot in Russia various aviation parts and equipment subject to Export Administration Regulations, including parts and equipment on the Commerce Control List set forth in Title 15, Code of Federal Regulations, part 774, Supplement No. 1, without first having obtained a license for such export from the United States Department of Commerce.

## OVERT ACTS

5.      In furtherance of this conspiracy, and to accomplish its purpose and objects, at least one of the co-conspirators committed or caused to be committed the overt acts set forth in Paragraphs 24 through 44 of the General Allegations Section of this Indictment, among others.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 6-8
## SMUGGLING OF GOODS
### (18 U.S.C. § 554(a))

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     On about the dates listed below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ALEXANDER MAMONOV**
**and**

███████████████

did fraudulently and knowingly export and send, and attempt to export and send, from the United States to a place outside thereof, that is, Russia, merchandise, articles, and objects, as detailed below, contrary to a law and regulation of the United States, that is, the Export Control Reform Act (ECRA) (50 U.S.C. § 4819); Submitting False or Misleading Export Information (13 U.S.C. § 305); and the Foreign Trade Regulations (15 C.F.R. § 30.71):

| COUNT | APPROXIMATE DATE | GOODS |
|-------|------------------|-------|
| 6 | January 17, 2023 | 300 element oil filters |
| 7 | August 16, 2023 | 1 Over Temperature Shut Off Valve |
| 8 | October 21, 2023 | 1 Air Data Inertial Reference Unit |

In violation of Title 18, United States Code, Sections 554(a) and 2.

### COUNTS 9-11
### SUBMITTING FALSE OR MISLEADING EXPORT INFORMATION
### (13 U.S.C. § 305(a)(1))

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     On about the dates listed below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ALEXANDER MAMONOV**
**and**

███████████████

15

did knowingly cause U.S. Company 1 and/or U.S. Company 2 to submit false and misleading export information through the Shipper's Export Declaration (SED) (or any successor document) or Automated Export System (AES) about the destination of the items, as detailed below, from the United States to Russia:

| COUNT | APPROXIMATE DATE | FALSELY LISTED DESTINATION | GOODS / TRUE DESTINATION |
|---|---|---|---|
| 9 | January 16, 2023 | United Arab Emirates (AE) | 300 Element Oil Filters / Russia |
| 10 | August 15, 2023 | China (CN) | 1 Over Temperature Shut Off Valve / Russia |
| 11 | October 18, 2023 | China (CN) | 1 Air Data Inertial Reference Unit / Russia |

In violation of Title 13, United States Code, Section 305(a)(1); and Title 18, United States Code, Section 2.

**COUNT 12**
**CONSPIRACY TO COMMMIT MONEY LAUNDERING**
**(18 U.S.C. § 1956(h))**

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From as early as in or around November 2022, the exact date being unknown to the Grand Jury, and continuing through at least on or about October 3, 2024, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ALEXANDER MAMONOV**
**and**

████████████████

did knowingly and voluntarily combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to commit offenses defined in Title 18, United States Code, Section 1956(h), namely:

a. To knowingly transmit and transfer monetary instruments and funds to a place in the United States from and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

b. To knowingly transmit and transfer monetary instruments and funds to a place in the United States from and through a place outside the United States knowing that the monetary instruments and funds involved in the transmission and transfer represent the proceeds of some form of unlawful activity and knowing that the transmission and transfer was designed, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

It is further alleged that the specified unlawful activity is smuggling of goods, in violation of Title 18, United States Code, Section 554(a).

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging criminal forfeiture to the United States of America

of property in which the defendants, **ALEXANDER MAMONOV** and █████████████, have an interest.

2.      Upon conviction of a violation of Title 50, United States Code, Section 4819, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States of America, pursuant to Title 50, United States Code, Sections 4819(d)(1)(A), (1)(B), and (1)(C), the following:

(a)      any property used or intended to be used, in any manner to commit or facilitate the offense;

(b)      any property constituting or traceable to the gross proceeds taken, obtained, or retained in connection with or as a result of such offense; and

(c)      any property constituting an item or technology that is exported or intended to be exported in violation of Title 50, United States Code, Section 4819.

3.      Upon conviction of a violation of, or a conspiracy to violate, Title 18, United States Code, Section 554, as alleged this Indictment, the defendant so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to such offense.

Upon conviction of a violation of Title 18, United States Code, Section 305, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States: (a) any of the defendant's interest in, security of, claim against, or property or contractual rights of any kind in the goods or tangible items that were the subject of the offense, pursuant to Title 13, United States Code, Section 305(a)(3)(A); (b) any of the defendant's interest in, security of, claim against, or property or contractual rights of any kind in tangible property that was used in the export or attempt to export that was the subject of the offense, pursuant to Title 13, United States Code, Section

18

305(a)(3)(B); and (c) any of the defendant's property constituting, or derived from, any proceeds obtained directly or indirectly as a result of the offense, pursuant to Title 13, United States Code, Section 305(a)(3)(C).

Upon conviction of a violation of, or a conspiracy to violate, Title 18, United States Code, Section 1956, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1)(C).

All pursuant to Title 50, United States Code, Section 4819, Title 18, United States Code, Section 981(a)(1)(C), Title 13, United States Code, Section 305, and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

███████████████████████

FOREPERSON

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

SEAN PAUL CRONIN
ASSISTANT UNITED STATES ATTORNEY

AHMED ALMUDALLAL
TRIAL ATTORNEY
NATIONAL SECURITY DIVISION

19

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

ALEXANDER MAMONOV, et al.,

_____/
                 Defendants.

CASE NO.: 25-CR-20174-WILLIAMS/GOODMAN

### CERTIFICATE OF TRIAL ATTORNEY

**Superseding Case Information:**
New Defendant(s) (Yes or No)_____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
[✓] Miami    [ ] Key West    [ ] FTP
[ ] FTL      [ ] WPB

I do hereby certify that:
1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Russian

4. This case will take __8__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)
   I    [ ]  0 to  5 days              [ ] Petty
   II   [✓]  6 to 10 days             [ ] Minor
   III  [ ]  11 to 20 days            [ ] Misdemeanor
   IV   [ ]  21 to 60 days            [✓] Felony
   V    [ ]  61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge_____ Case No._____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge_____ Magistrate Case No._____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge_____ Case No._____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the_____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
    Sean Paul Cronin
    Assistant United States Attorney
    SDFL Court ID No. A5500940

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

Defendant's Name:   Alexander Mamonov

Case No: 

Count #: 1

Conspiracy to Violate the Export Control Reform Act

Title 50, United States Code, Section 4819
* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 years
* Max. Fine:  $1,000,000

Counts #: 2-4

Unlawful Export of Commerce Control List Items

Title 50, United States Code, Section 4819(a)(1)
* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 5 years
* Max. Fine:  $1,000,000

Count #: 5

Conspiracy to Commit Smuggling

Title 18, United States Code, Section 371
* Max. Term of Imprisonment: 5 years
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 years
* Max. Fine:  $250,000

*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   Alexander Mamonov

**Case No:**

**Counts #: 6-8**

Smuggling of Good

Title 18, United States Code, Section 554(a)
* **Max. Term of Imprisonment: 10 years**
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release: 3 years**
* **Max. Fine:  $250,000**

**Counts #: 9-11**

Submitting False or Misleading Export Information

Title 13, United States Code, Section 305(a)(1)
* **Max. Term of Imprisonment: 5 years**
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release: 3 years**
* **Max. Fine:  $10,000**

**Count #: 12**

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment: 20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release: 5 years**
* **Max. Fine:  $500,000 or twice the value of the property involved in the transaction**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** ▆▆▆▆▆▆▆

**Case No:** _____

Count #: 1

Conspiracy to Violate the Export Control Reform Act

Title 50, United States Code, Section 4819
* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 years
* Max. Fine:  $1,000,000

Counts #: 2-4

Unlawful Export of Commerce Control List Items

Title 50, United States Code, Section 4819(a)(1)
* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 5 years
* Max. Fine:  $1,000,000

Count #: 5

Conspiracy to Commit Smuggling

Title 18, United States Code, Section 371
* Max. Term of Imprisonment: 5 years
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 years
* Max. Fine:  $250,000

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** ___▮▮▮▮▮▮▮_____

**Case No:** _____

Counts #: 6-8

Smuggling of Good

Title 18, United States Code, Section 554(a)
* **Max. Term of Imprisonment: 10 years**
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release: 3 years**
* **Max. Fine:  $250,000**

Counts #: 9-11

Submitting False or Misleading Export Information

Title 13, United States Code, Section 305(a)(1)
* **Max. Term of Imprisonment: 5 years**
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release: 3 years**
* **Max. Fine:  $10,000**

Count #: 12

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment: 20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release: 5 years**
* **Max. Fine:  $500,000 or twice the value of the property involved in the transaction**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**